[No. 12625.    Department One.    August 11, 1915.]

## SEATTLE TAXICAB & TRANSFER COMPANY, *Appellant,* v. THE CITY OF SEATTLE *et al., Respondents.*[1]

MUNICIPAL CORPORATIONS—POLICE POWERS—TAXICAB DRIVERS—SO-LICITATION — ORDINANCES — CONSTRUCTION.    An ordinance regulating the conduct of taxicab and other drivers forbidding them to be at certain places ˙or upon the property of transportation companies, "while engaged in such occupation and soliciting customers or passengers for hire," does not prohibit them from entering such places when they are not soliciting patronage; nor does it attempt to regulate transportation companies; and the same is a lawful regulation of such solicitations, as a protection of the public.

SAME—POLICE POWERS—ORDINANCES—"SOLICITING."    ˙In an ordinance regulating solicitation by taxicab and other drivers, and confining the same to certain places, "soliciting" within the meaning of the ordinance is to ask for and seek to obtain the right to carry passengers or their baggage for hire by actual persuasion or persistent entreaty, and the mere presence of a driver, whether in uniform or not, and whether alone or accompanied by a vehicle, is not "soliciting."

SAME—OFFICERS—ACTIONS—PERSONAL LIABILITY FOR COSTS.    In an action against a city and its chief of police to enjoin the enforcement of certain ordinances, in which the chief was acting without personal interest and as the mere agent of the city, it is error, on giving judgment against the defendants, to enter judgment for costs against the chief personally.

INJUNCTION — ACTIONS — ISSUES AND RELIEF—REMEDY AT LAW—CRIMINAL PROCESS.    In an action to enjoin certain acts of police officers in the enforcement of an ordinance regulating solicitation by taxicab and other drivers, it is error, in granting the relief sought, to enter a decree enjoining the plaintiff from soliciting passengers and baggage for hire in any other manner or places than that fixed by the ordinance, where the defendant had asked no such relief, and where the enforcement of the ordinance by criminal process is a sufficient protection against violation of the ordinance.

Cross-appeals from a judgment of the superior court for King county, Frater, J., entered November 4, 1914, in favor of the plaintiff, in an action for an injunction, tried to the court.    Modified.

[1]Reported in 150˙ Pac. 1134.

*Brightman, Halverstadt & Tennant,* for appellant.

*James E. Bradford* and *William B. Allison,* for respondents.

Mount, J.—This action was brought by the plaintiff to restrain the city of Seattle and its police officers from making alleged unlawful arrests of drivers of taxicabs within the city of Seattle. On a trial of the case, the court entered an order restraining the city and its police officers "from interfering with any of the vehicles of the plaintiff, and from controlling the location or position of the same under and by virtue of said ordinance, except when the drivers or persons in charge of such vehicles are actually engaged in soliciting passengers or baggage for hire outside of the limits fixed in said ordinance for soliciting." The court also adjudged "that 'soliciting' within the meaning of said ordinance, is to ask for, or to seek to obtain the right and privilege of passengers to transfer such passengers or their baggage for hire by actual persuasion or persistent entreaty, and that the presence of any of the plaintiff's officers, agents, servants, or employees, either in or not ·in uniform of the plaintiff alone, or accompanied by any vehicle of the plaintiff with or without its name thereon, is not soliciting within the meaning of said ordinance." The court enjoined the plaintiff "from soliciting passengers or baggage for hire, in any other manner, or at any other place or places than that fixed in said ordinance." The court further ordered that the plaintiff have and recover its costs and disbursements from each of the defendants. The defendants have appealed from that part of the order which restrains the city and its officers from arresting drivers when not actually engaged in soliciting passengers for hire, and from the order defining "soliciting," and from the order that the plaintiff shall recover costs from each of the defendants. The plaintiff has appealed from that part of the order which enjoins the plaintiff from soliciting baggage or passengers

for hire in any other manner or at any other place or places than as fixed in the ordinance. We shall, therefore, in this opinion, designate the parties as plaintiff and defendants.

The principal facts in the case are not in dispute. It appears that, in August, 1914, an ordinance was passed by the city council relating to the conduct of persons while engaged as hack and taxicab drivers, providing a penalty for violation of the ordinance, and repealing certain other ordinances of the city. This ordinance, omitting the title, is as follows:

"Section 1. It shall be unlawful for any hack, taxicab, automobile or omnibus driver, hotel runner, steamboat runner, expressman or solicitor while engaged in such occupation and soliciting customers or passengers for hire, to go upon, stand or be, or allow or permit his, or the vehicle or any vehicle under his control at such time, to stand upon or occupy any street, avenue, alley, viaduct, overhead bridge or other public place, except the following: That portion of King street in the city of Seattle lying east of the east line of Second avenue south and west of a line twenty (20) feet west of the west line of Third avenue south as vacated by Ordinance No. 2849; that portion of Fourth avenue south lying south of the south line of Jackson street; that portion of Railroad avenue lying west of the center line of said Railroad avenue.

"Section 2. It shall be unlawful for any hack, taxicab, automobile or omnibus driver, hotel runner, steamboat runner, expressman or solicitor, while engaged in such occupation and soliciting customers or passengers for hire, to go further than three (3) feet upon the sidewalk on either the north or south side of that portion of King street described in section 1 of this ordinance, or on either the east or west side of said Fourth avenue south lying south of the south line of Jackson street, measuring from and being that part of the sidewalk next to and abutting upon the gutter. It shall be unlawful for any hack, automobile, taxicab or omnibus driver, hotel runner, steamboat runner, expressman or solicitor while engaged in such occupation and soliciting customers or passengers for hire, to stand or be, or allow or permit his, or the vehicle or any vehicle under his control at such time on said Railroad avenue west of the center line of

said Railroad avenue in front of any gangway or roadway leading into any wharf or dock, or to allow or permit any vehicle under his control to stand less than sixteen (16) feet from any wharf or building on the west side of Railroad avenue.

"Section 3.    It shall be unlawful for any hack, taxicab, automobile or omnibus driver, hotel runner, steamboat runner, expressman or solicitor while engaged in such occupation and soliciting customers and passengers for hire, to stand at any place other than directly in the rear of and within three (3) feet of the vehicle or conveyance in use by him or under his control or for which he is soliciting customers and passengers for hire, and it shall be unlawful for any hack, taxicab, automobile or omnibus driver, hotel runner, steamboat runner, expressman or solicitor, while engaged in such occupation and soliciting customers and passengers for hire, to stand in the rear of any vehicle or conveyance not in use by him or under his control or unless he shall be soliciting customers and passengers for such vehicle or conveyance.

"Section 4.    No hack, taxicab, automobile or omnibus driver, hotel runner, steamboat runner, expressman or solicitor, while acting as such and soliciting customers or passengers for hire, shall stand or go into any gangway or roadway at any wharf or railroad station, when such gangway or roadway is being used by passengers coming from or going to such wharf or railroad station.

"Section 5.    No hack, taxicab, automobile or omnibus driver, hotel runner, steamboat runner, expressman or solicitor soliciting customers or passengers for hire, either for himself or another, shall call out to passersby, nor shall any such hack, taxicab, automobile or omnibus driver, hotel runner, steamboat runner, expressman or solicitor purposely stand in front of, or among passengers, or take hold of the baggage of any such passenger without his or her first requesting him so to do, nor make derogatory remarks of rival houses, nor insulting remarks to passengers declining to go with him.

"Section 6.    It shall be unlawful for any hack, taxicab, automobile or omnibus driver, hotel runner, steamboat runner, expressman or solicitor while engaged in soliciting customers or passengers for hire, to go into or upon any wharf

or railroad station in the city of Seattle when such wharf or railroad station is being used by passengers leaving or entering such wharf or railroad station.

"Section 7.  Any person violating any of the provisions of this ordinance shall be deemed guilty of a misdemeanor and upon conviction shall be fined in any sum not exceeding one hundred dollars, or imprisoned in the city jail for a term not exceeding thirty days, or may be both fined and imprisoned."  Ordinance No. 33,381.

The rest of the ordinance is immaterial to a consideration of this case.

It also appears that the plaintiff is engaged in the taxicab business in the city of Seattle; that, prior to the time this ordinance was passed, it had exclusive permits from railway companies entering the city of Seattle to stand their taxicabs upon the property of the railway companies; also to enter certain docks with their taxicabs; that these railway companies and transportation companies are carriers operating into the state of Washington and into the city of Seattle from other states and countries; that these transportation companies sell tickets upon their lines which carry the passengers in the taxicabs of the plaintiff to different stations of railways and steamboats within the city of Seattle; that the plaintiff has the privilege of sending men upon steamboats entering Seattle, and upon railway trains, before they reach the city of Seattle, to solicit baggage and passengers upon such boats and trains when these passengers reach the city of Seattle.  It also appears that the places described in the ordinance where taxicabs and other vehicles may stand when soliciting passengers for hire, are upon streets upon which depots and wharves front.  It also appears that the police officers in the city of Seattle have arrested drivers of the plaintiff's taxicabs while they were upon wharves within the city and not soliciting passengers for hire; that when taxicabs were at the depots upon private property of the transportation companies, where they were permitted to go by the transportation companies, police of-

ficers have arrested drivers for being there, when they were not actually engaged in soliciting passengers.

Upon the trial in the court below, the plaintiff, by its counsel, admitted that the ordinance was valid, but there contended, and in its brief contends in this court, that drivers of taxicabs who are not engaged in soliciting passengers for hire are not violators of the terms of the ordinance, and that the arrest of these drivers is illegal and unwarranted interference with the lawful conduct of the business of the plaintiff.

The defendants, in their brief upon their appeal, contend, first, that it is unlawful under the ordinance for the drivers of taxicabs to be upon railroad premises, and to be upon the docks of transportation companies, even though they are not actually engaged in soliciting passengers or baggage, and that, under the ordinance, the officers of the city have the right to arrest such drivers. The object and intent of the ordinance above quoted, it seems to us, is clear. In every section where the drivers of taxicabs and other vehicles are forbidden to be, it is coupled with the statement, "while engaged in such occupation and soliciting customers or passengers for hire." We think it was plainly the intent of this ordinance to protect the traveling public from annoyance by drivers of taxicabs and other vehicles, and to prevent such drivers from annoying passengers as they go to and depart from such depots and wharves. It was clearly not the intention of the ordinance to prohibit taxicabs and other vehicles from entering upon passenger depot property, or upon wharves in connection with steamboat transportation, at other times than those stated, because the ordinance does not in terms prohibit persons from occupying such premises when they are not soliciting patronage.

Argument is made in the brief of the defendants to the effect that the city has the right to pass such an ordinance as the one in this case. In the case of *Seattle v. Hurst*, 50 Wash. 424, 97 Pac. 454, 18 L. R. A. (N. S.) 169, we had

under consideration the ordinance which was repealed by the ordinance now in question; and we there held that the city, in the exercise of its police power, might reasonably regulate the business of carrying passengers for hire within the city limits; and at page 432 we said:

"The ordinance does not affect the right of the railway or depot company to employ men for itself, or to contract so as to permit one company or person or any number of persons, to care for the comfort or desires of passengers. The ordinance simply prohibits solicitors from soliciting business from passengers at certain times in railway stations, and nothing more."

The effect of the ordinance now under consideration is the same as that ordinance. It undertakes only to regulate these drivers of vehicles while engaged in such occupation *and soliciting customers or passengers for hire.* We have no doubt of the right of the city to pass the ordinance. In fact, the validity of it, as stated above, is conceded by the plaintiff.

The defendants apparently argue that the transportation companies have no right to grant to one taxicab company the exclusive privilege of entering upon its property. That question is not in this case. The ordinance does not by its terms affect the contracts of the railway companies with other carriers. It does not undertake to do so. It simply provides that, when persons are engaged in the occupation of taxicab or other drivers, and "while engaged in soliciting customers or passengers for hire," they shall station themselves in certain places. It does not undertake to say that all persons shall be permitted upon the depot property or the wharves of carriers. It simply regulates the conduct of drivers while they are upon such property, and provides where they shall stand outside of such property when they are soliciting patronage. So it is apparent that there has been no attempt by this ordinance to regulate the conduct of transportation companies, such as railroads, steamboats,

etc., but only to regulate the conduct of drivers of taxicabs within the city. We have no doubt that the city can make such regulations, and that is all it has attempted to do.

The defendants further argue that the court erred in defining "soliciting" as used in the ordinance. In passing upon this question, the trial court said that " 'soliciting,' within the meaning of said ordinance, is to ask for, or to seek to obtain the right and privilege of passengers to transfer such passengers or their baggage for hire by actual persuasion or persistent entreaty, and that the presence of any of the plaintiff's officers, agents, servants, or employees, either in or not in uniform of the plaintiff, alone, or accompanied by any vehicle of the plaintiff, with or without its name thereon, is not soliciting within the meaning of said ordinance." We think no valid objection can be made to this definition of the word "soliciting" as the same is used in the ordinance in question. As stated above, the purpose of this ordinance was to protect travelers so that they might not be subjected to inconvenience or annoyance, and the words "soliciting customers or passengers for hire" mean that drivers, when asking persons to become patrons of their cabs, shall be at a certain place or places. The mere fact that the driver of a cab was standing upon the street, mute, with his cab, could not be construed as soliciting, under the terms of this ordinance. The city plainly did not intend that if a taxicab driver was sitting upon the seat of his cab at some other place in the city, saying nothing, that he would be subject to arrest because he was without the places named in the ordinance. The police officers of the city of Seattle, prior to the bringing of this action, had construed the ordinance to prohibit taxicab drivers from being at any other place than the places mentioned in the ordinance, whether they were actively soliciting or not. The fact that a driver wore a cap or uniform, or upon his cab was a designation of the fact that the cab was for hire, was construed by the police officers as an act of solicitation, for

which the driver was arrested.  It was to prevent this that the action was brought.  We think the court very properly defined what constituted soliciting within the meaning of the ordinance.

It appeared upon the trial that the defendant Griffiths was chief of police in the city of Seattle.  He was made a party to the action, and the court adjudged that the plaintiff recover its costs from each of the defendants.  It is argued by the plaintiff that this was error, because the chief of police was acting as an agent of the city, and that the costs should not be taxed to him personally.  We think this position must be sustained.  In *Townsend Gas & Elec. Light Co. v. Hill*, 24 Wash. 469, 64 Pac. 778, we held, that where an action was brought against the officers of a city in their individual capacity, that they need not furnish a bond on appeal.  We think the same reasoning should apply in a case of this kind where the defendant Griffiths is simply the agent or officer of the city, and is not personally interested in the result of the litigation, and that he should not be liable for costs personally in a case like this.  In this respect we think the trial court erred.

The plaintiff contends upon its appeal that the court erred in enjoining and restraining the plaintiff from soliciting passengers and baggage for hire in any other manner or at any other place or places than that fixed in the ordinance.  The contention is, first, that no such relief was demanded by the defendants in their answer, and second, that the enforcement of the ordinance by criminal process when its terms are violated is a sufficient protection, and that a restraining order is not necessary for the benefit of the city.  We think both of these propositions must be sustained.

We are satisfied, for the reasons herein stated, that the trial court was right in enjoining the officers from arresting the drivers of the plaintiff's taxicabs when such drivers were not actively engaged in soliciting passengers in prohibited

places.   The trial court was right in defining the meaning of the word "soliciting," as used in the ordinance.   But the court erred in taxing costs against the chief of police; and erred in restraining the plaintiff from soliciting passengers for hire at other places than those fixed in the ordinance. Since the decree must be modified in the particulars mentioned, neither party will recover costs upon this appeal.

MORRIS, C. J., MAIN, and HOLCOMB, JJ., concur.